We're going to move now to case number five, appeal number 18-3685 James Mollet v. City of Greenfield. Mr. Donovan. Thank you, your honor. May it please the court, Chris Donovan on behalf of Mr. Mollet. There are many disputed issues of material fact in this case that call for trial and the district court was wrong to grant summary judgment for the defendant. Perhaps the most important and what I think the parties have focused on pretty clearly in the briefs is whether or not Mr. Mollet reporting the Hernandez incident and thereby engaging in protective activity was a but for cause of his constructive discharge. As the authorities cited in detail in our briefs clearly established, we believe the answer is yes. There can be more than one but for cause of an event as long as it is a substantial factor in bringing about the harm. Here the district court found that basically because Mr. Mollet admitted to being miserable at his deposition before the incident that anything that happened later couldn't be a but for cause. But that's not a correct application of the law. Additionally, this is a disputed fact in and of itself. The degree of misery that he was under and what exactly it constituted is also disputed. The defense has offered really no objective discipline report, reprimand that was given to Mr. Mollet, any negative evaluation or any other impact on his job performance that his supposed misery may have had. When I went back and looked at page 4 of the defense brief, basically it alleges that Cone, the chief here, stopped texting and calling Mr. Mollet. He did things contrary to what they had talked about before he became chief and he wasn't implementing the vision that Mr. Mollet thought that they had kind of agreed upon. These are very vague and I would argue de minimis indicators of Mr. Mollet's misery. So if being miserable is the standard that can supersede any later but for cause, then really no employee who's being honest and would admit to past either dissatisfaction or unhappiness could ever recover in a retaliation suit. And the facts of this case and the law just does not support that. So then this goes into how do you establish that causation and there's a couple ways that Mr. Mollet offered below that are disputed facts here appropriate for trial. The first is pretext, explaining that there was a pretextual reason why the employer did what they did. And here the defendant tries to paint this picture that Mr. Mollet and the rest of the command staff were all on the same page. They're all concerned about this incident. But that's just not true. Unlike three of the other command staff members who had known about the incident for two days and did nothing about it, did nothing to investigate or report or follow up, Mr. Mollet did not see the offending flag for two days and ignore it. He immediately, after learning from four of his own shift members, after learning about the offensive flag, he immediately reported it and then that forced Chief Cone and Assistant Chief Weber to have to do something about it. And this is our pretextual explanation. It's reasonable to infer that they resented having to investigate and have to take action for something that they obviously had already ignored and wished to ignore. And again this supports our pretext argument. And so the only reason I can think why the defense continues to cling to this false misrepresentation that Mr. Mollet also ignored the offending flag for two days is because they recognize how damaging this is as a pretext. Maybe Mr. Erke hopefully can answer that for the court today. I still can't explain why they cling to that so much. But regardless, it's a disputed issue, a material fact appropriate for a jury to decide. I want to clarify a little bit. There were three battalion commanders, is that what they called them? Yes, three battalion chiefs, an assistant chief, and then the chief. But there were three battalions and I assume that's three shifts. Correct. So there's a battalion commander at each shift. That's correct. I'm calling a battalion commander. It's my military training, okay. So I mean, I was trying to get the structure of the chain of command and all that sort of thing. And it's when the, when, what was it, when, when I want to get everybody's name correct, when Mollet is bypassed and someone, fortunately a subordinate, becomes promoted in his higher up, that's when all the whatever stress and other things occurred. It's not really about assistant chief Weber being promoted over him. He was Mr. Mollet's subordinate before that. It's more about Mr. Mollet and Cone had some conversations before and had phone calls and texts and then that's kind of what stopped and that's what didn't continue as Mr. Mollet was kind of used to. But again, these are, you know, very vague kind of petty supposed reasons for being miserable. It didn't reflect on anything he did in his job. He wasn't reprimanded. He wasn't disciplined. There was no negative evaluations there. He basically continued to be a very good employee that was praised and highly regarded. So was he, was it his misery where he decided to apply for the other job or is it something he wanted to do anyway? No, the applying for the other job comes at the end of this kind of long string of what we label suspicious timing where things really went downhill the year after the Hernandez incident and it was towards the end of that when it was made clear to him that he's being threatened with demotion. He's being threatened with termination. He's being, he's suffering these other adverse consequences. That's when he then started to pursue and look at other jobs. This is where I wasn't, I guess I should have studied more. This is a longer period of time than I thought we were talking about. Yes, well. It's over a year? The suspicious timing aspect of our causation argument is over a longer period of time. It begins pretty much immediately after the Hernandez incident but then it goes on for about a year after that. This is laid out pretty, pretty detailed in our brief, I believe. Pages 13 and 14 of our brief. We really kind of try to go at length to break that down. John, another factual question. Are any of these individuals involved part of a union? I believe that not the command staff. I don't know the answer for sure but I think just the firefighters are part of a union and then once they elevate to command staff they're no longer but I'm not 100% sure about that. So Mollett, Cone, Weber, all non-unionized? I believe so. And the reason for my question is the nature of the claim that Mollett's bringing. If he were part of some other union, say a supervisor's or something above MPA, where the command staff is part of a union, some of the conduct itself that Mollett was having happen to him, wouldn't that be actionable through some type of a union grievance? I would think so. Mollett did at some point bring some of his grievances, I believe, to the mayor and the human resources director of the city and tried to kind of get involved that way but they really basically deferred and didn't do anything about it. And again, things were just we feel that he can point to the incident as a but-for cause because of the huge difference between how he performed and was treated and how he went about his job prior to it and then all the bad things that happened afterwards, we think is a compelling case for a but-for causation. Would you like to reserve the rest of your time? I would, Your Honor. Thank you. Thank you, Mr. Donovan. We'll next hear from Mr. Erke. Mr. Erke. Thank you, Jerry. Good morning, Your Honor. Bill Erke for the Superior Department. I need to respond fairly quickly to a couple of questions that you've asked and something that counsel said. He continues, and Mr. Mollett continues to say, basically tries to take this court back to, was the report of the complaint a motivating factor, a but-for cause? That is not the law. It is clearly briefed and Judge Rovner has made it clear at this court on a Supreme Court, made it clear in the Southwest Texas v. Nassar case, that in order to get there, the act of reporting the complaint has to be the but-for cause. And it goes further to say he has to prove that he wouldn't have left for the city of, or the village of Menomonee Falls, but for him reporting the Then he has to tie that in causally to what he comes up with after the fact as complaints that make him unhappy. The case law we've cited. And then his incident, this is where he didn't put away his bedclothes or whatever, and they, sort of with rookies or whatever, they routinely play a little prank on him, and this time they hung it up I had in the text this picture of, it said something about border patrol or something. Of course, it turns out Hernandez didn't find that problem. But that's beside the point. I guess he tries to think there's some Hernandez report, where he reports it, sort of, and says something should be done, and then the two superiors supposedly connive and say, oh yeah, let's compliment him on this and deceive, whatever. That seems to be what's shadowing this thing. And it doesn't seem that we've really alleged it that way. I agree, Judge. What happens, and this is all after the fact in the context of the Hernandez incident is actually a formal complaint is made to Mr. Mollet by another firefighter that Sunday morning. This all occurs Friday night. The formal complaint comes to Mr. Mollet from one of his staff on his battalion on his shift, and that's where, Judge, you hit right on it, because at 9.32 that Sunday night, he emails the chief and the assistant chief and says, this has come to my attention, what should I do? Within 30 minutes on a Sunday night, he gets an email back from assistant chief Weber saying, we will not put up with this. This is not tolerable. Will you please investigate it? At 10.44, 42 minutes later, thank you, and this is Mr. Mollet's language. I appreciate the fact that you agree with my feelings on this. This is all within an hour and 12 minutes of when he first reports it. He thanks the assistant chief and the chief and agrees that they all feel this is improper. And what's interesting is he then asks the chief and the assistant chief to be let off the hook and not investigate it. Now, he's the chief. He's not. And it goes back to, I think, part of what Judge Brennan asked about the union. Part of the problem here was that early on, Mr. Mollet had been very cozy with union members, and there's one incident where he claims they're watching his back. It's because the assistant chief walked up to him, and this is in the record, and you're going to ask me, I can't tell you exactly where, but he walks up, and everybody stops talking because Mr. Mollet is talking to three union members, and the assistant chief walks up, and that ends. And so the chief and the assistant chief were concerned, and this is before Hernandez, about his relationship and his leadership style. So we go back to what you asked about, Judge, and he is asked to investigate. He says, I'd rather not. Indicative of his feelings about the union members. And then it's Judge Cohn the next morning that says, we really want you to investigate this. This is part of your leadership style. This is part of the leadership quarrel that went on starting in June of 2011, eight months before Hernandez, where, be images of what would go on there. And so he turns that down. He says, I'd rather not investigate. Then the chief, in this short amount of time, says, please do. If you don't want to, let me know, because I'll reassign it. And if you want any help or guidance or instruction, please come to me. So the concept after the fact that's developed, that that is all somehow a pretext, and they were mad. It makes absolutely no sense. It goes directly to the district court. Both the magistrate judge and then Judge Adelman on review, both see that there's no reasonable inference that comes from here. One, that they're even upset. And this whole case, Judge, rests on his premise that they were somehow unhappy with him. And the case, with all due respect, I believe, ends there. Because it's nothing more than speculation, and we go through that. So there's no chicanery. There's no nefarious going on. There's no communication between Assistant Chief Weber and Chief Cohn that doesn't include Mr. Mollet at that point. Because he gets a new job, he doesn't lose any money, except he gets paid less the new job, I guess. He does allege that. Yeah. I don't want to say all's well that ends well, but this seems like a lot of clutter that doesn't end up with anything very tangible, I guess. I totally agree, Judge. And why is that nailed down at the end? Because Mr. Mollet himself admits, one, during this 12-month period, he never looked for work anywhere else. Then in a December 2012 email blast, he sees from the Chief's Association that this position is open at Menomonee Falls. He looks at that, and Menomonee Falls is different. They have a public safety director, they have a police director, and a fire director. So he's looking for a job where he is effectively the fire chief. He reports up to a public safety director. In Greenfield, one, he was never going to be the chief because Chief Cohn is very young and had come in in June of 2011. So he knows that. He testifies himself, Judge, I would not have even applied or looked for work, and I had not looked for work, until I get this email blast. And he also testifies, had I not gotten the email blast, I would not have been the chief. I would have never left Greenfield, and that's right in his deposition testimony. And I think the record is, the ECF number is 20, I believe, his deposition. More importantly, and I think you were about to get there, Judge, or you know about it, if you look at what he sent to Menomonee Falls about why he wanted that job. And keep in mind, now we're 12 months out, and there has not been one mention of the Hernandez report, one mention of the Hernandez incident, in anything that has gone on. And he says, I want the challenge of leading a department that is in this different structure, where I've got the fire department, another individual has the police, and we report to one, and I'm excited because you're about to change your EMS program to an EMT certification program. I've been an EMT for 12 years. This is why I want the job. And then he testifies, if it hadn't been for Menomonee Falls, he would have never left Greenfield. So it goes right back to what you said, Judge. This is a lot to do about nothing. And it's all created mentally, in hindsight, after the fact. There's a couple, again, I wanted to go, because counsel kept saying, A, but for cause, and it's got to be B, but for cause, the case law is clear, Judge Rogner made it clear, and First Magistrate Judge Duffin made it clear, and then Judge Adelman made it clear. So we've got, this is the third set of eyes to look at this, and I understand it's de novo, but this is the third set of eyes to look at this, and everybody is in agreement, that there is no reasonable inference, starting with the premise that they're unhappy, and with all due respect, I know the district court decided an argument could be made for an adverse job action, but remember, this is all a voluntary decision that he makes to leave after he gets the email blast, not in light of anything that anybody did. And then, with regard to the protected activity, the protected activity usually is anyone who's involved in an investigation, I agree with that. Keep in mind, that he did see, and it's in his deposition testimony, I saw the sign up on the wall, but I had to go off on my shift. So I don't do anything about it. And then I come back, and Donna Perkins, the firefighter, reports it to me. So now I pass it on. He did see that, and so it makes no sense. There's no basis, and there's no even reasonable inference either, that the... You're repeating yourself, you know. I apologize. And so, let me finish. Instead of repeating myself, I'll ask that you affirm both what the magistrate, Judge Duffin, found in dismissing, and Judge Adelman. And I apologize for repeating myself. Thank you, Mr. Urke. Mr. Donovan, rebuttal. Thank you, Your Honors. I do have a few points I want to hit. Again, he didn't see the Mexican flag sign. There was another sign that said, Cesar Hernandez, with the year, and it looked like military service. That's what he saw. He did not see the flag and ignore it for two days, which they continue to claim, even today, which I find surprising. As far as a but-for cause, it is, that's the standard. Nassar references a but-for cause. This court in Carlson expressly notes in footnote one of that decision, there can be more than one but-for cause in an event. And then Nassar cites extensively the restatement of torts, and I go through that in my brief, and the restatement of torts also support that there can be more than one but-for cause. I respectfully very much disagree with how he characterizes the but-for cause. The pretext, it's significant to note here, Assistant Chief Weber, who is one of the ones emailing back supposedly right away showing this identical concern, he did see the sign, the offensive Mexican flag sign, for two days and did nothing until Mollett reports it. And this is in the record at Document Entry 26 at 8. He saw it days before, per his own admission, and did nothing about it. So the fact that we have this sanitized paper trail of emails, that's fine, but we believe that there's reasonable inferences and facts that support the fact that despite those, Weber and Cohn resented having to investigate this because they ignored it for two days, and it wasn't until Mollett made his report and brought it to a head that they were forced to act. And I want to run down a little bit about the timeline here. So they ignore it. Mollett reports it as soon as he learns about it from members of his own battalion. They then, Weber and Cohn, then shove their investigation off on Mollett and tell him to investigate other battalion chiefs' shifts, basically his colleagues' shifts. And he at first says, well, I really prefer not to do that, and then they put more pressure on him, and then he agrees to do it. And this is contrary to the city policy. This was supposed to be referred to the HR director. This is located at Cohn's deposition, court record 43, I'm sorry, page 43 of his deposition, court record 35. And then, of course, they don't put their disagreement with him in writing. Who's the HR director? Is that somebody outside the department? Correct. That would be someone that works for the city, not in the department. That would be more objective, and that's what the city policy really would call for, but they shove it off on Mollett. So they put him in a tough spot, asking him to investigate his own battalion chief colleagues and their shifts. Judge Manning, you mentioned, well, what's really the loss here? There was a little decrease in salary. It's not huge, but there was a decrease in salary the first couple years when he went from Greenfield to Menomonee Falls, but the bigger problem is the difference in benefits are huge. The benefits from Greenfield versus Menomonee Falls, and of course, we didn't get this far in the case because it got dismissed on summary judgment, but that's what he would be moving for for damages more than anything else would be the difference in benefits. And it's true. How old is he? I'm sorry? How old is he? Fifty-three, I believe. So he would be looking at retirement. Exactly. He's looking at retirement. Well, he originally was hoping for maybe in the next couple years, and now he's thinking he has to delay that. And we concede and agree, he never wanted to leave Greenfield. That's correct. He didn't want to. It was only the escalation of these things, again, that I put on page 13 and 14 of my opening brief that led him towards the end when he got this email from Menomonee Falls, it looked like a good position. That's when he applied for it. That was not his plan, and he felt like he had to and was forced out at that point. Thank you, Mr. Donovan. Thank you. Thank you. Thank you, Mr. Donovan. Thank you, Mr. O'Rourke. The case will be taken under advisement.